UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
  ELAINE POWELL-BELNAVIS,         :
                                      :
                   Plaintiff,      :
                                      :    **MEMORANDUM DECISION AND**
        -against-            :    **ORDER**
                                      :
  ISABELLA CASILLAS GUZMAN,     :    23-cv-7344 (BMC)
                                      :
                 Defendant.     :
-------------------------------------------------------- X

**COGAN**, District Judge.

      This retaliation. hostile work environment,[1] and constructive discharge suit is before the

Court on defendant's motion for summary judgment.  For the reasons set forth below,

defendant's motion is granted.

## BACKGROUND

      Plaintiff is an African American Christian woman over the age of forty.  She has been

employed by defendant since 1979.  Plaintiff became an Economic Development Specialist

("EDS") in 2015 and held that position until December 2021, when she retired.

      In 2018, plaintiff began reporting to Peter Fehnel, who also managed three other EDS

employees.  Each EDS was assigned a different borough within which to work.  Plaintiff was

assigned to cover Manhattan.

      As early as November 2020, plaintiff began complaining about what she felt was

discriminatory treatment.  In response to an email from Fehnel asking why plaintiff had logged

teleworking hours without his permission and why she had requested both annual leave and

---

[1] Plaintiff raises a hostile work environment claim for the first time in response to defendant's motion for summary judgment.  This claim is not included in plaintiff's amended complaint.  It is unclear whether plaintiff raises the issue of a hostile work environment as a retaliatory action to support her retaliation claim or as a separate claim. The Court thus analyzes both.

telework for the same dates, plaintiff stated that "I am being harassed by these emails and by you.  I am also being discriminated against by you."  Plaintiff asserted that this discrimination was based on her request that Fehnel's supervisors review plaintiff's performance review from that year.  Plaintiff also responded in a separate email that she could not provide answers to Fehnel's questions for three weeks and that Fehnel's questions were "harassment, intimidation, retaliation and out right discrimination on your part.  Others are not being harassed with the same regard as I am."  Plaintiff alleges that after she sent Fehnel these emails, "she boldly informed Mr. Fehnel that she had rights under the law, and she believed that he was violating her rights," to which Fehnel responded that he did not care about her rights.

Plaintiff eventually contacted an Equal Employment Opportunity ("EEO") counselor and filed an EEO complaint on April 12, 2021, alleging discrimination based on race, color, sex, age, religion, and retaliation as the cause of her two week suspension in March 2021, as well as harassment and hostile work environment based on race, color, sex, age, religion, and retaliation. Plaintiff's EEO complaint was denied on June 7, 2021.

Before plaintiff raised any complaints about her treatment at work, plaintiff had received "meets expectations" ratings (in 2018 with a 3.4 out of 5) and "exceeds expectations" ratings (3.6 out of 5 in 2019, 4.4 out of 5 in 2020) on her annual reviews.  Also predating plaintiff's April 12, 2021 EEO complaint, in February 2021 Fehnel conducted a performance review for plaintiff for the first quarter of fiscal year 2021.  He rated plaintiff as "not meeting expectations" in each category reviewed.

Four days after plaintiff filed her April 2021 EEO complaint, Fehnel completed plaintiff's performance review for the second quarter of fiscal year 2021.  He again stated that she was not meeting expectations in all categories reviewed.  By the next quarter, however,

Fehnel stated that plaintiff was meeting expectations in all categories. And at plaintiff's annual review, held on October 15, 2021, Fehnel stated that plaintiff met expectations in each category, giving her a 3.0 rating out of 5.

Plaintiff requested that John Mallano, Fehnel's supervisor, review plaintiff's 2021 annual review. Mallano reviewed plaintiff's performance evaluation and advised plaintiff that he found that Fehnel had substantiated plaintiff's performance rating of "meets expectations." Plaintiff then requested that Fehnel's second-level supervisor, Beth Goldberg, review plaintiff's annual review, explaining that she deserved a level 5 outstanding review; that Fehnel did not approve her GMATT entries throughout the year, unlike other employees whose requests were approved throughout the year;[2] and that Fehnel's failure to approve her GMATT entries until August 2021 meant that he had not evaluated her properly.

Plaintiff also had issues with Fehnel's treatment of her requests to take and change leave. In addition to the November 2020 incident in which plaintiff logged teleworking hours without Fehnel's permission and requested both annual leave and telework for the same dates, plaintiff encountered several similar issues in 2021. In August 2021, for a two-week pay period, plaintiff requested one week (40 hours) of annual leave, which Fehnel approved. Plaintiff later requested to take two weeks (80 hours) of sick leave during this pay period, converting her annual leave days to sick days because she had gotten sick. Although plaintiff asserts that Fehnel "refused to convert her sick days," she does not dispute that she used 80 hours of paid sick leave during the pay period, and in fact did not use any annual leave in 2021.

---

[2] EDS employees were required to document their activity in defendant's Goals and Measures Activity Tracking Tool ("GMATT") within seven days after completing an activity or within two business days after returning to the office.

Next, on October 26, 2021 at 4:19pm, plaintiff submitted a request to take off the following day, October 27, 2021, from 6:30am to 12:30pm.  Despite not receiving approval for this leave request, plaintiff took leave.  Fehnel marked plaintiff as absent without leave ("AWOL") for this time.  Lastly, in December 2021, plaintiff requested annual leave for 1.5 days but then asserted that she had withdrawn this request and instead would be teleworking.  Despite claiming that Fehnel refused to revert plaintiff's leave, as noted above plaintiff did not use any annual leave in 2021.  Plaintiff brought this issue to Mallano, stating that Fehnel "has it in for me," "I am not sure what's going on but this is discriminatory toward me in particular," and "I am the only employee who gets this type of treatment when ask [sic.] to revert leave."

Other than plaintiff's unhappiness with her reviews and difficulties communicating with her supervisor about her time off, plaintiff was required to receive approval from Fehnel for activities for which she perceived other EDS employees did not need approval.  Plaintiff was required to submit a Weekly Work Plan to Fehnel, who would review and approve these plans.  Plaintiff admits that she was required to submit her Weekly Work Plan for approval before Fehnel was her supervisor.  Fehnel was also required to approve plaintiff's requests to work in boroughs other than Manhattan.  Throughout 2020 and 2021, another EDS, who was not assigned to Manhattan, "frequently" worked in Manhattan without informing plaintiff.  Plaintiff recalls that the frequency of the other EDS working in Manhattan did not change throughout 2020 and 2021.

Finally, for her role as an EDS, plaintiff received a government-issued cell phone, which she lost in September 2019.[3]  Plaintiff was given the option to purchase a new cell phone to

---

[3] In responding to defendant's Rule 56.1 statement of undisputed facts, plaintiff objects to the use of the word "lost." However, plaintiff submitted a Report of Property, signed and dated to "certify that the above is a true and complete statement of the facts relating to this matter," in which she stated that she "cannot find the phone.  I search but

replace the government issued cell phone that she lost.  Plaintiff chose not to purchase a

replacement phone, so defendant provided plaintiff with a designated Microsoft Teams phone

number.  Defendant eventually issued plaintiff a new cell phone in November 2021.

Plaintiff contacted an EEO counselor about these issues on November 29, 2021 and

eventually filed an EEO complaint, which was denied.  Plaintiff then commenced this action.

## LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is

warranted where the "movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The court must

view all facts in the light most favorable to the nonmoving party.  See Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248 (1986) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-

59 (1970)).  There is no genuine issue of material fact "where the record taken as a whole could

not lead a rational trier of fact to find for the non-moving party."  Lovejoy-Wilson v. NOCO

Motor Fuel, Inc., 263 F.3d 208, 212 (2d Cir. 2001) (citing Matsushita Elec. Indus. Co. v. Zenith

Radio Corp., 475 U.S. 574, 587 (1986)).

## DISCUSSION

### I.    Retaliation

#### A.    Timeliness

Before bringing a claim under Title VII, "a federal government employee must timely

exhaust the administrative remedies at his disposal."  Tassy v. Buttigieg, 51 F.4th 521, 530 (2d

Cir. 2022) (internal quotation marks and quotation omitted).  One such administrative remedy

---

nothing."  The Court finds that such a signed statement confirms that "lost" is the proper word to characterize this
situation.

that must be exhausted is the requirement that a federal employee "initiate contact with an EEO counselor within 45 days of the date of the matter alleged to be discriminatory." Id. at 531 (quoting 29 C.F.R. § 1614.105(a)(1)) (cleaned up). "This 45-day period serves as a statute of limitations; thus . . . claims alleging conduct that occurred more than 45 days prior to the employee's initiation of administrative review are time-barred." Id. (internal quotation marks and quotation omitted).

Generally, for purposes of the 45 day period, acts are considered to have occurred on the day they happened. Id. However, there is a "continuing violation doctrine," which "applies to claims composed of a series of separate acts that collectively constitute one unlawful practice;" in other words, "claims that by their nature accrue only after the plaintiff has been subject to some threshold amount of mistreatment." Id. at 532 (internal quotation marks and quotations omitted). This doctrine "delay[s] the commencement of the statute of limitations period until the last discriminatory act in furtherance of the broader unlawful practice." Id. (internal quotation marks and quotation omitted).

As relevant here, plaintiff contacted an EEO counselor on November 29, 2021. Thus, defendant argues, the only retaliatory acts subject to judicial review are those that occurred after October 15, 2021. Accordingly, defendant asserts that the following allegations of retaliatory actions are time-barred: (1) defendant's denial of plaintiff's request for a new government-issued cell phone in September 2019, (2) defendant's April 2021 performance review of plaintiff finding her not meeting expectations, and (3) defendant's denial of plaintiff's request to convert annual leave to paid sick leave in August 2021.

Notably, plaintiff does not raise any opposition to defendant's argument for dismissal of all claims accruing before October 15, 2021. Nor could she. Each of the above-identified acts

occurred outside the 45-day period and were not part of an ongoing violation such that the continuing violation doctrine would apply.  Even if a plaintiff asserts several acts of retaliation that are related to each other, and some of those acts fall within the 45-day period while others do not, the continuing violation doctrine does not apply.  Id. (quoting Patterson v. Cnty. of Oneida, 375 F.3d 206, 220 (2d Cir. 2004)).  Discrete acts, even if "part of 'serial violations,'" do not qualify as a continuing violation.  Lucente v. Cnty. of Suffolk, 980 F.3d 284, 309 (2d Cir. 2020) (quoting National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 114-15 (2002)).  Because retaliation claims only require employer action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination," Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006), there is no threshold amount of mistreatment necessary for a retaliation claim.  Thus, the continuing violation doctrine does not apply to bring plaintiff's untimely retaliation claims within the 45 day period.

Thus, this Court will only consider plaintiff's alleged claims of retaliation that occurred after October 15, 2021.[4]

## B.    Merits

"[T]o establish a prima facie case of retaliation, a plaintiff must demonstrate that (1) she engaged in protected activity, (2) the defendant was aware of that activity, (3) she was subjected to a retaliatory action, or a series of retaliatory actions, that were materially adverse, and (4) there was a causal connection between the protected activity and the materially adverse action or actions."  Carr v. New York City Transit Auth., 76 F.4th 172, 180 (2d Cir. 2023) (footnote

---

[4] This timeliness requirement is not analyzed in the context of plaintiff's constructive discharge claim or hostile work environment claim because plaintiff's constructive discharge claim indisputably accrued after October 15, 2021, when plaintiff retired on December 31, 2021, and hostile work environment claims are subject to the continuous violation doctrine.  See Chin v. Port Auth. of New York & New Jersey, 685 F.3d 135, 156 (2d Cir. 2012).

omitted).  "A protected activity is action that protests or opposes statutorily prohibited

discrimination."  Giscombe v. New York City Dep't of Educ., 39 F. Supp. 3d 396, 401

(S.D.N.Y. 2014) (internal quotation marks and quotation omitted).  To prevail on a retaliation

claim, retaliatory animus must be the but-for cause of the challenged adverse employment

action(s).  Univ. of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 352 (2013).

Plaintiff claims that she engaged in the following protected activities: (1) sending Fehnel

an email on November 9, 2020, stating that she was being harassed by his emails and being

discriminated against by him; (2) filing an EEO Complaint on April 12, 2021; (3) emailing

Fehnel's second-level manager, Beth Goldberg, on November 2, 2021 requesting that Goldberg

review plaintiff's performance review and stating "[Fehnel] treated me differently . . . than he

treated others;" and (4) sending an email to Fehnel's direct manager, John Mallano, in December

2021 asserting that Fehnel "has it in for me," was discriminating against plaintiff, and was

treating her differently than her co-workers.

The three emails that plaintiff states are protected activity do not "protest[ ] or oppose[ ]

statutorily prohibited discrimination."  Id.  These alleged protests do not even mention a

protected characteristic or protected activity because of which plaintiff was experiencing

discrimination.  No reasonable juror could find that these emails amount to challenges to

"statutorily prohibited discrimination," when they do not even mention such discrimination.

Plaintiff's April 12, 2021 EEO complaint alleged discrimination based on race, color,

sex, age, religion, and retaliation as the cause of her two week suspension in March 2021.  She

also asserted a claim of harassment and hostile work environment because of race, color, sex,

age, religion, and retaliation based on Fehnel: belittling and raising his voice at plaintiff and

saying that she was not doing her job, telling plaintiff to end a phone call in three minutes and go

8

with him to a meeting, stopping plaintiff from working with the Women Business Centers, telling plaintiff to only reach out to for-profit organizations and not religious or black organizations, changing plaintiff's ability to work in boroughs other than Manhattan, asking outside organizations about their interaction with plaintiff, and giving plaintiff a rating of "exceeds expectations" on her October 2020 performance review.  Accordingly, plaintiff's filing of this complaint opposed statutorily prohibited discrimination and was a protected activity.

Plaintiff claims Fehnel retaliated against her for filing her April 12, 2021 EEO complaint by taking the following adverse employment actions (as limited to actions that were timely asserted): (1) requiring plaintiff to receive approval for her Weekly Work Plans and for any work she wanted to conduct outside of Manhattan; (2) rating plaintiff as "meeting expectations" and assigning her a 3 out of 5 in her 2021 annual review on October 15, 2021; (3) not approving plaintiff's GMATT entries in a timely manner; (4) not properly processing plaintiff's leave requests, including marking plaintiff as AWOL in October 2021 and denying plaintiff's request to revert 2 days of leave in December 2021; (5) allowing another EDS employee to work in Manhattan without plaintiff's knowledge; (6) creating a hostile work environment for plaintiff; and (7) constructively discharging plaintiff.

Even assuming that plaintiff has provided sufficient evidence to support that these acts rise to the level of adverse employment actions taken against her, none of the actions have anything to do with plaintiff's April 12, 2021 EEO complaint or the discrimination she alleged therein.  In attempting to show the connection between plaintiff's protected activity and adverse employment actions, she cites to the deposition testimony of two of her co-workers, her own deposition, one comment made by Fehnel, and the proximity in time of her protected activity to the adverse employment actions.

As for plaintiff's co-workers' testimony, when asked whether any harassment or discrimination towards plaintiff was based on plaintiff's protected characteristics or protected activity, Abreu replied "I don't know.  I don't know."  This testimony clearly does not provide evidence of retaliatory animus, or, in fact, any connection between plaintiff's protected activity or protected characteristics and the adverse employment actions of which she complains.  And the deposition testimony of the other co-worker on which plaintiff relies consists of inadmissible hearsay and legal conclusions, which the Court cannot consider on this motion for summary judgment.[5]

Plaintiff's testimony that her son overhead Fehnel saying "in an aggressive tone" that she should answer the phone when he calls her also provides no evidence of retaliatory animus.  A reasonable juror could not conclude, based on this comment (or the above deposition testimony) that Fehnel created a hostile work environment for plaintiff in retaliation for plaintiff's protected activity.

Similarly, Fehnel's comment that he did not care about plaintiff's rights does not show retaliatory animus, and, again, was not related to retaliation at all.  Viewed in the light most favorable to plaintiff, the comment was made in the context of plaintiff "boldly inform[ing] Mr. Fehnel that she had rights under the law, and . . . that he was violating her rights."  In responding

---

[5] Plaintiff's co-worker, Carolyn Clark, was asked whether Fehnel's actions were retaliatory based on plaintiff's protected activity, to which the entirety of her answer was "Yes."  Asked if there was anything else she wanted to add, Clark stated that Fehnel "likes to micromanage and he – it was – the environment in that particular department was very hostile and he did nothing to . . . correct it."  Clark clarified in her next answer that she was not in plaintiff's department and did not know what was happening in that department.  These statements are impermissible legal conclusions and inadmissible hearsay.  See Unicorn Crowdfunding, Inc. v. New St. Enter., Inc., 507 F. Supp. 3d 547, 571 (S.D.N.Y. 2020) (deposition testimony about a company's subjective motivations "would consist either of out-of-court statements by [the deponent] impermissibly offered for the truth of the matter asserted, or improper opinion testimony that the deponent is not competent to provide" (citation omitted)); Wahad v. F.B.I., 179 F.R.D. 429, 435 (S.D.N.Y. 1998) (assertions not based on personal knowledge and "[u]ltimate or conclusory facts and conclusions of law . . . cannot be used on a summary judgment motion").  Even if they were admissible, these statements do not provide any connection between plaintiff's April 12, 2021 EEO complaint and any adverse employment actions taken against plaintiff.

that he did not care, Fehnel was not commenting on plaintiff's decision to file the April 12, 2021 EEO complaint or any of her protected characteristics discussed therein. There is no inference to be drawn from this comment that Fehnel was engaging in adverse employment actions against plaintiff because she had previously complained of discriminatory treatment. A comment with no connection to plaintiff's protected activity does not shed light on whether any adverse employment actions taken against plaintiff were done to retaliate against her for engaging in that protected activity.

Finally, temporal proximity between a plaintiff's protected activity and an adverse employment action "alone is insufficient to defeat summary judgment." Carr, 76 F.4th at 182 (quoting Kwan v. Andalex Grp. LLC, 737 F.3d 834, 847 (2d Cir. 2013)).

Because plaintiff fails to make out a *prima facie* case of retaliation, defendant's motion for summary judgment on plaintiff's retaliation claim is granted.

## II.    Hostile Work Environment

Although unclear from plaintiff's opposition in response to defendant's motion for summary judgment, it appears that plaintiff may also be asserting a hostile work environment claim separate from her retaliation claim. A hostile work environment is one "permeated with discriminatory intimidation, ridicule, and insult, . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotation marks and quotations omitted). A plaintiff must show that "the complained of conduct: (1) is objectively severe or pervasive – that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's" protected characteristics or

protected activity.  Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) (quotation omitted)

(cleaned up).  "Factors that a court might consider in assessing the totality of the circumstances

include: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is

threatening and humiliating, or a mere offensive utterance; and (4) 'whether it unreasonably

interferes with an employee's work performance.'"  Id. (quoting Harris, 510 U.S. at 23).

Plaintiff has not shown that there was objectively severe or pervasive harassment or

abuse.  Drawing all reasonable inferences in plaintiff's favor as the nonmovant, the following

can be considered as part of her hostile work environment claim: receiving two offensive

comments and two negative quarterly reviews, as well as one positive review; experiencing

delays in getting her leave requests and GMATT entries approved; being managed more closely

than other employees; and being given a Teams phone number to use for work instead of getting

a replacement phone for the one that she lost.  These experiences do not qualify as harassment or

abuse, even viewed in the totality of the circumstances.  Because plaintiff fails to produce any

evidence to support that she was subjected to "objectively severe or pervasive" harassment or

abuse, Patane, 508 F.3d at 113, defendant's motion for summary judgment is granted on

plaintiff's hostile work environment claim.

### III.  Constructive Discharge

To make out a constructive discharge claim under Title VII, a plaintiff must show that

"[she] was discriminated against by [her] employer to the point where a reasonable person in

[her] position would have felt compelled to resign."  Green v. Brennan, 578 U.S. 547, 555

(2016).  "[A] constructive discharge cannot be shown simply by the fact that the employee was

unhappy with the nature of her assignments or criticism of her work, or where the employee

found the working conditions merely difficult or unpleasant."  Green v. Town of E. Haven, 952

F.3d 394, 404 (2d Cir. 2020) (internal quotations omitted).  Rather, "[a] constructive discharge occurs when an employer 'intentionally creates a work atmosphere so intolerable that [the plaintiff] is forced to quit involuntarily.'"  Borski v. Staten Island Rapid Transit, 413 F. App'x 409, 411 (2d Cir. 2011) (quoting Terry, 336 F.3d at 151-52).

This "standard is higher than the standard for establishing a hostile work environment." Fincher v. Depository Trust and Clearing Corp., 604 F.3d 712, 725 (2d Cir. 2010) (reasoning that because the plaintiff did not establish a hostile work environment, "her claim of constructive discharge also fails").  As plaintiff has not presented any evidence to establish that she experienced a hostile work environment, her constructive discharge claim also fails.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted.

**SO ORDERED.**

_Brian M. Cogan_
_____
U.S.D.J.

Dated: Brooklyn, New York
       March 27, 2025

13